Opinion by
 

 Baldrige, J.,
 

 This controversy is between the United States and a general creditor as to priority of payment of Federal income taxes out of the assets of an insolvent estate.
 

 
 *3
 
 Mark D. Kuhn, a resident of Pittsburgh, died February 2,1939, intestate. Letters of administration were granted to his widow. She took credit in her account for her widow’s exemption of $500, administration expenses, and those incurred in the last illness and burial of the decedent. To those items no exceptions were filed. There remained for distribution the sum of $2,-851.23. The Orphans’ Court of Allegheny County allowed a preference of $1,690.12 to the United States for Federal income taxes for the years 1931, 1935, and 1938, with interest. The balance ,of the fund was distributed pro rata among general creditors whose claims amounted to $38,987.05.
 

 The Commonwealth Trust Company of Pittsburgh, one of the principal general creditors, having judgments aggregating over $10,000, filed exceptions to the decree allowing priority to the claim of the United States. It contends that section 13 [a] of the Fiduciaries Act of 1917, June 7, P. L. 117, 20 PS §501 prescribes the order the debts of a decedent should be paid. That section reads as follows: “All debts OAving ,by ¡any person within this State at the time of his decease shall be paid by his executors or administrators, so far as they have assets, in the manner and order following; namely,— One, funeral expenses, medicine furnished and medical attendance given during the last illness of the decedent, servants’ wages, not exceeding one year; two, rents, not exceeding one year; three, all other debts, without regard to the quality of the same, except debts due to the Commonwealth which shall be last paid.” If this section controls and the Federal jurisdiction must yield thereto, the claim of the United States comes under section 3 namely “all other debts” and is not entitled to a preference.
 

 The authority to lay and collect income taxes is given by the Sixteenth Amendment to the United States Constitution Avhich provides: “The Congress shall have power to lay and collect taxes on incomes, from what
 
 *4
 
 ever source derived, without apportionment among the several states, and without regard to any census or enumeration.” In the exercise of this power, granted to facilitate the collection of taxes, Congress enacted Section 3466 of the Revised Statutes, 31 U. S. C. A., Sec. 191, which reads in part as follows: “Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied;......” Its purpose was to secure adequate revenue to sustain public burdens and to that ,end this section must be construed liberally:
 
 Price v. U. S.,
 
 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373. The appellant challenges its constitutionality as an .unauthorized interference by the Federal Government with the sovereign power of the Commonwealth of Pennsylvania to establish the manner and order the debts due from the estates of its decedents shall be paid. A study of this statute convinces us that it is secure against this attack.
 

 As the lower court well said: “There can not be two sovereigns controlling the citizens or his estate after the delegation of power by one to the other and an appropriate exercise of the power delegated. The delegation of the power to lay and collect a tax; on income by the states to the Federal Government subordinated the sovereignty of the state of Pennsylvania to the Constitution and laws of the United States, the supreme law of the land.”
 

 Our conclusion is supported in principle by the decisions of the United States Supreme Court and our own Supreme Court. Chief Justice Marshall in
 
 U. S. v. Fisher,
 
 2 Cranch 358, 396, 2 L. Ed. 304, ruled that the United States, as the holder of a bill of exchange negotiated in the ordinary course of trade, was entitled to a preference over general creditors where the debtor becomes a bankrupt. The case arose under the fifth pec
 
 *5
 
 tion of the Federal Act of March 3, 1797, which granted the United States priority in terms substantially similar to section 3466 of the Revised Statutes. The famous Chief Justice answered the objection that Federal priority usurped the .states’ right to establish priorities, as follows: “This claim of priority on the part of the United States will, it has been said, interfere with the right of the state sovereignties respecting the dignity of debts, and will defeat the measures they have a right to adopt to secure themselves against delinquencies on the part of their own revenue officers. But this is an objection to the constitution itself. The mischief suggested, so far as it can really happen, is the necessary consequence of the supremacy of the laws of the United States on all subjects to which the legislative power of Congress stands.”
 

 It has been ruled that Federal income taxes are “debts” within the meaning of that word as used in section 3466 of the Revised Statutes and as such are entitled to priority over claims of general creditors in the case of an insolvent corporation being administered under a District Court receivership:
 
 Price, Receiver v. United States,
 
 supra.
 

 Our own Supreme Court followed the Fisher case in
 
 Commonwealth, for the use of the United States, v. Lewis,
 
 6 Binney 266, where Federal priority was sustained, under the Act of March 3, 1797, supra, in the case of an insolvent estate of a deceased Collector of Customs for the Port of Philadelphia. Chief Justice Tilghman, pointing to the authority granted the United States under the Federal Constitution for the exercise of such priority stated: “Although it was thrown out in the course of the argument, that under the constitution of the United States, congress had no power to assume a preference, yet no reasons were assigned against the exercise of such power. Congress have ,a right To make all laws which shall be necessary and proper for carrying into execution the several powers vested in them by
 
 *6
 
 the constitution.’ Art. 1, sect. 8. jBy the same article and section, they have power ‘to lay and collect taxes, duties, imposts and excises.’......It will appear from these observations, that if the congress have judged it necessary to give a preference to the United States, it is no more than most other governments have done; which strengthens the argument in favor of the necessity and propriety of the measure. But the validity of this law has been already decided in the case of the United States against Fisher, &c., assignees of Blight, 2 Cranch 358, by the Supreme Court of the United States, who in ¡all cases arising under the constitution or acts of congress made in pursuance of it, are judges in the last resort.”
 

 The United States Supreme Court in
 
 Spokane County v. U. S.,
 
 279 U. S. 80, 49 S. Ct. 321, 73 L. Ed. 621, 624, where the insolvent corporation was being administered by a state court receivership, sustained a preference given the United States for accrued income taxes over county taxes due by the corporation. In
 
 New York v. Maclay et al., Receiver,
 
 288 U. S. 290, 53 S. Ct. 323, 77 L. Ed. 754, the United States filed its claim for additional taxes with the receivers of an insolvent corporation, and the state filed its claim for certain taxes. The court held that under section 3466, supra, the claim of the United States had preference over the debt .owing to the State of New York in a distribution of funds.
 

 Under the decisions reviewed, the constitutional power of congress to enforce such priority under the statute, even as against the estate of an insolvent individual decedent who dies domiciled in the state, is clear. Compare
 
 Harrison v. Deutsch,
 
 294 Ill. App. 813 N. E. 2d 511.
 

 Judgment is affirmed.