## Garrett Trust

Before Sinkler, P. J., Klein, Bolger, Ladner, Hunter and Boland, JJ.

The facts appear from the following excerpt from the adjudication of

SINKLER, P. J., Auditing Judge.—This trust arises under a deed dated May 3, 1932, by which Elizabeth S. Garrett, settlor, transferred the fund now accounted for to the accountant, in trust, to pay the income to settlor for life, with further provisions to take effect on her death. . . .

The reason for filing the account, as stated in the statement of proposed distribution, is the termination of the trust because of the death of Elizabeth S. Garrett, settlor, on November 22, 1947.

In the statement of proposed distribution it is re-cited that the executor of the will of deceased settlor claims that unpaid income taxes due by settlor, in the amount of $3,672.69, with interest, and the funeral bill of settlor in the amount of $1,202.10 due to George R. Huff, Jr., should be paid from the trust fund now before the court. These claims are not admitted by the accountant.

By the deed of trust it is provided, inter alia, that on the death of settlor the trustee shall distribute "to the executors named in the grantor's last will and testament a sum sufficient to pay all said grantor's just debts and funeral expenses". It is claimed by the executor of her will that because of this provision the trust fund now accounted for is subject to the two claims above set forth, and also to the claim of the Eastern Mennonite Home in the amount of $176.95 and the cost of decedent's safe deposit box in the First National Bank of Lansdale, $2.40. The executor also makes claim to income accrued to the date of death of settlor in the amount of $399.22, and requests that the court set aside a fund of $5,000 for the payment of such Federal estate taxes as may be due.

### Federal Income Tax Claim

The United States Government has made claim against decedent's estate for Federal income tax due

for the years 1939 to the date of her death. It is claimed by both the Federal Government and the executor of decedent's will that this Federal tax liability is a debt of decedent within the meaning of the deed of trust, directing the payment of a sum to the executors sufficient to pay grantor's "just debts and funeral expenses".

Whether debts are to be construed as including taxes is clearly a matter of construction dependent upon all the circumstances. This is conceded by counsel for the executor, who contends, however, that debts does include taxes, citing Kuhn's Estate, 146 Pa. Superior Ct. 1 (1941) and Price v. U. S., 269 U. S. 492 (1925).

Counsel for the beneficiaries of the trust contends that decedent used the word "debt" in its ordinary meaning of an obligation incurred by the voluntary act or contract of the debtor rather than an obligation imposed by the superior will of the governing sovereign. This distinction is recognized in Dole v. Philadelphia, 337 Pa. 375 (1940), in which the Supreme Court states: " 'As the obligation to pay taxes does not rest upon any contract express or implied, or upon the consent of the taxpayer, a tax is not a debt in the ordinary sense of the word' ". See also Bradford v. Storey, 75 N. E. 256, 189 Mass. 104 (1905) ; Boyd v. Dillman, 197 Atl. 830 (Delaware Superior Ct. 1938) ; Lane County v. Oregon, 74 U. S. 71 (1868) ; St. Joseph Land Co. v. MacLean, 32 F.(2d) 984 (1929).

The court has made a careful study of the deed of trust and also of the will of May 3, 1932 . . . which will was executed the same day as the deed of trust, and the will of February 18, 1938, . . . in order to determine whether there were any other provisions which might throw some light on the meaning which decedent intended to ascribe to the provision under consideration. None could be found; but it is apparent that the deed of trust is a carefully drawn instrument,

prepared by an attorney. It is eight typewritten pages in length, together with a schedule listing the assets transferred in trust. The fact that the deed was carefully prepared adds weight to the argument that if debt were to include taxes that would have been stated, and that the failure to do so confirms that decedent employed the word debt in its ordinary common usage.

It is therefore held that the Federal income tax claim is not a "debt" within the meaning of the trust deed, and therefore the claim of the executor and of the Federal Government that the amount of the income tax, together with interest as claimed, be paid from the trust fund now accounted for, is dismissed.

In reaching this conclusion, the court has ignored as irrelevant evidence relating to the mental competency of decedent. The deed of trust was executed in 1932, and what evidence there was of incompetence is of a later date. Decedent's will dated February 18, 1938, has been admitted to probate, and although it is stated that an appeal is pending therefrom, it is noted that a petition to appoint a guardian for decedent on the basis of her being a weak-minded person was dismissed in 1943. It was not until 1946 that such an appointment was made.

A stipulation of facts executed by counsel representing the parties in interest has been submitted to the court and is attached to the record and made a part hereof. In view of the disposition above made, the court has considered the facts set forth in this stipulation as irrelevant.

The court has also considered as irrelevant the size of decedent's estate, as the only issue presented to the court is whether decedent intended by the word "debts" to include taxes as well.

In view of the disposition made, the court has considered it unnecessary to pass upon the facts relevant to the conduct of Samuel Woffindin.

### Funeral Bill

The claim is made that the bill for the funeral of decedent, totaling $1,202.10, should be paid from the trust estate. It carefully details the services and property rendered or supplied, but for one reason or other fails to disclose the cost, per item, excepting as to the clothing of deceased and the expenditures for the hearse, the burial proper, automobiles for the family, six professional pallbearers and the cost of newspaper notices. All other services and the cost of the casket and other burial equipment is grouped in one item of $868.60. It is sought to justify this bill on the basis of the economic position of decedent. This, however, is contradicted by the fact that decedent was a weak-minded person, for whom a guardian had been appointed, and at the time of her death she was in the Eastern Mennonite Home. Under these circumstances, it cannot be contended that the determination of what is a reasonable funeral expense should be guided by the same consideration as in the case of a person who is sui juris. The safeguards which the law had thrown about her property for its protection during her life are not necessarily stricken down by her death.

After consideration of all the circumstances of the case and of the bill for, and the nature of, the funeral services rendered, to the extent that such services are set forth in the record, it is held that $600 is a reasonable amount to be paid from the trust fund for this purpose. The sum of $600 will accordingly be awarded to George R. Huff, Jr., on account of his claim for funeral services rendered decedent. The restriction of his claim to $600 is without prejudice to claimant's collecting any additional sum from the person who contracted with him for the rendering of such services. . . .

## Accrued Income Claim

By the deed of trust, the decedent, described therein as the grantor, directed that the trustee "pay over the net income . . . to the grantor, for and during the term of her natural life". As of the date of the grantor's death, there had accrued $399.22 of income, which had not yet been distributed to the grantor. This amount is now claimed by the executor of her will, on the ground that, having accrued to her during her life, the right to payment vested in her, and by operation of law, in her executor.

This claim is opposed upon the basis of the sentence which follows in the deed of trust the provision above quoted. This latter sentence provides that "upon the death of said grantor, the trustee shall transfer, pay over and deliver, after deducting all proper or necessary charges or expenses, the principal and accrued income of the trust herein created in the following manner: . . .".

The determination of this question depends in part upon the meaning to be ascribed to "accrued income". Two facts are significant: First, the decedent treated "accrued interest" and "accrued income" as synonymous. Thus, in paragraph (b) on page 2 of the deed of trust she directed the trustee upon her death to deliver to her sister two bonds with "accrued interest thereon", and provided that should the sister predecease her "the share of principal and accrued income herein given to her" should pass as part of the residuary estate. This interchangeable use of "accrued interest" and "accrued income" appears in succeeding provisions of the deed of trust. The second fact which is significant is that the assets transferred in trust, as seen from schedule A attached to the deed of trust, are all bonds or stocks. It was therefore natural for the

decedent to contemplate that at the moment of her death there would be interest accruing but not yet due on some of the bonds or potential dividends on some of the stock not yet declared. Rather than require the trustee to attempt to segregate the bond interest or stock dividends not yet payable from the bonds or stocks, she merely directed that the "accrued interest" or "accrued income" be transferred with the stock or bond which gave rise to that interest or income. Thus construed, the provision for the payment of "principal and accrued income . . . in the following manner", has no application to the case of income collected by the trustee but not paid over prior to the death of the decedent. Such an indirect "accumulation" of income is not, in the absence of other facts not here present, to be regarded as an illegal accumulation.

It is therefore held that to the extent the sum of $399.22 represents income which was payable to the trustee prior to the death of the decedent or which was actually received by him prior to that time, an award should be made to the executor of the decedent's will. To the extent, if any, that such sum represents interest or income not distributable to the trustee prior to the death of the decedent, no award shall be made.

As the record does not disclose the nature of the accrued income in dispute, the accountant is directed to pay to the executor of the decedent's will so much of the sum of $399.22 as is distributable to him in accordance with this adjudication.

### Reservation of Fund for Federal Estate Tax

Counsel for the executor requests that the court direct the reservation of $5,000 as a fund to pay such Federal estate taxes as may be due. This request is not made by the accountant, nor has any claim for Fed-

eral estate tax been made by the United States Government. Under these circumstances, there is apparently no basis for making such reservation, and none will be ordered.

### Direct Awards to Creditors

The exact language of the deed of trust required the accountant to pay "to the executors . . . a sum sufficient to pay all said grantor's just debts and funeral expenses". In this adjudication, the awards have been made directly to creditors instead of to the executor.

This course is justified in view of the fact that it necessarily was the decedent's primary intention that the creditors be paid. She directed payment to the executor, not because she desired to increase the size of the estate on which her executor could claim commissions, but merely because the executor, as the person with whom claims would be filed, would be the most suitable agent to act for her in the payment of her claims.

It is also desirable to make the awards directly to creditors in order to avoid any question as to whether the transfer from the trust estate to the executor would retain the character of the payment of creditors' claims or would assume the character of a gift.

A compelling reason for making the direct distribution is that if the money herein held distributable to the creditors were paid into the estate they would then be subordinated to the priority of the Federal Government for its income tax claim. In that event, the decedent's intention that the creditors be paid would be defeated, as the estate held by the executor is insufficient to pay the Federal tax claim, and the creditors' claims above allowed.

It has therefore been concluded that the principle that the intention of the settlor is the prime guide to the interpretation of the trust deed justifies what is

admittedly a departure from the letter of the deed in order to achieve the clear and obvious intended result.

The account shows a balance of principal, personal estate, $53,609.76, of which the sum of $600 is awarded to George R. Huff, Jr., undertaker; the sum of $176.95 to the Eastern Mennonite Home; the sum of $2.40 to L. Albert Gray, executor of the will of Elizabeth S. Garrett, deceased, in reimbursement of rental of safe deposit box paid to First National Bank of Lansdale, and the balance, subject to the payment of such transfer inheritance tax, if any, as may be due the Commonwealth of Pennsylvania, is awarded to Emma Woffindin Ridler, Samuel Woffindin, Fidelity-Philadelphia Trust Company, trustee for Joseph Woffindin, Florence Woffindin Hampshire and Robert Stroud Merkel, in the shares designated in paragraph (h) of the statement of proposed distribution.

The account shows a balance of income, $541.22, which, together with all additional income to date of distribution, subject to payments heretofore properly made on account of distribution, is awarded as follows: The income, if any, accrued and distributable to the trustee prior to the death of settlor, is awarded to the executor of her will, and the balance is awarded as set forth in the prayer of the statement of proposed distribution.

Leave is given to the accountant to make all necessary transfers and assignments.

Counsel for the accountant will submit a schedule of distribution in duplicate and certify to its correctness and conformity herewith, which, when duly approved by the auditing judge, will be annexed hereto and form part hereof.

And now, March 30, 1949, the account is confirmed nisi.

*C. Brewster Rhoads*, for exceptant.

*Lewis H. Van Dusen* and *Henry W. Sawyer, 3rd,* contra.

*Gerald A. Gleeson* and *Thomas J. Curtin,* for Collector of Internal Revenue.

AMENDED OPINION SUR EXCEPTIONS TO
ADJUDICATION

BOLGER, J., March 31, 1950.—Following the filing of the opinion sur exceptions to adjudication, exceptants filed a petition for reargument, wherein they asked to be heard again on two points: (1) That this court has jurisdiction over the subrogation claim of his clients against the interest of Samuel Woffindin in the fund now before the court, and (2) that the amount of $5,000 ordered reserved for the payment of Federal estate tax is excessive. The petition for reargument was granted and reargument heard.

Elizabeth S. Garrett executed the deed here in question on May 3, 1932, and she died on November 22, 1947. In the deed she reserved to herself a life estate and directed that upon her death "the principal and accrued income of the trust" should be paid over and delivered in a certain manner. The first disposition directed to be made was: "(a) to the Executors named in the Grantor's Last Will and Testament a sum sufficient to pay all said Grantor's just debts and funeral expenses." The auditing judge found that certain income taxes admittedly due by her estate, amounting to $3,672.69, with interest thereon from July 15, 1948, were not "just debts" within the meaning of the provision of the deed last quoted, and he declined to allow such claim by her executor.

Normally, whether or not income taxes should be allowed as "just debts" would depend primarily upon the intention of settlor as expressed in her deed or in her will, but a careful search of both the deed and her last will (as well as a prior will executed simultane-

ously with the deed) for any expressed or implied intention in this regard has proved futile. Clearly, she did not contemplate the claim now being made for unpaid income taxes at the time she executed the deed or either of the wills in evidence, and it is fallacious to argue that any intention one way or the other can be drawn from what she wrote. Each of the instruments mentioned merely refers to "just debts and funeral expenses" and nowhere in any of them can be found a reference to payment of taxes of any kind, nor is there any attempt made therein to define the meaning of "just debts". There is no extrinsic evidence which would assist in ascertaining settlor's true intention, and necessarily the question must be resolved from an examination of other cases and the application of common sense.

Several cases are cited in support of the proposition that a tax is not a debt in the ordinary sense of the term because liability to pay taxes does not rest upon any contractual relation between the parties. This is a broad statement and it is not to be taken too literally; it is a rule which cannot and should not be applied indiscriminately in all cases. In Derry Township School District v. Barnett Coal Co. et al., 332 Pa. 174, the question was whether a school district had such an adequate statutory remedy at law for the collection of unpaid taxes assessed against real estate as would preclude it from seeking relief in equity. The isolated statement that "A tax is not a debt in the ordinary sense of the term" appears on page 179 of that report. In Dole v. Philadelphia et al., 337 Pa. 375, the constitutionality of the Philadelphia Wage Tax Ordinance was upheld in an exhaustive opinion wherein the opinion writer saw fit to quote:

"As the obligation to pay taxes does not rest upon any contract express or implied, or upon the consent of the taxpayer, a tax is not a debt in the ordinary

sense of the word": citing 61 C. J. 70, §4, Notes 39 and 40, and Moore v. Mitchell, 30 F.(2) 600; affirmed in 281 U. S. 18. In Fell v. Johnston et ux., 154 Pa. Superior Ct. 470, 472, appears the statement: "A tax is not a debt in an ordinary sense and liability to pay taxes does not arise from a contractual relationship between the parties." That case involved the right of a judgment debtor to seek exemption from liability for unpaid real estate taxes assessed against land owned by him at the time the taxes accrued, claimed by a purchaser at sheriff's sale upon foreclosure of a mortgage. The facts of the foregoing cases do not focus themselves upon the situation here in hand and therefore the statements quoted therefrom are not to be taken at face value and considered as binding authority.

In Kuhn's Estate, 146 Pa. Superior Ct. 1, the Superior Court of Pennsylvania held that under section 3466 of the Revised Statutes, 31 U. S. C. §191, the United States has priority over a general creditor for payment of Federal income taxes out of the assets of the insolvent estate of a decedent who died domiciled in this State.

In Price, Receiver, v. United States, 269 U. S. 492 (1926), a case involving priority of a claim for income taxes over other general debts of a corporation in receivership, the United States Supreme Court held that taxes due the United States are "debts" within the meaning of Revised Statutes, sec. 3466. That statute reads in part as follows:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; . . ."

It was held that the section of the statute last quoted must be construed liberally, and its purpose is not to be defeated by unnecessarily restricting the application of the word "debts" within a narrow or technical meaning. In our own State, in Kuhn's Estate, supra, which involved priority of a claim for unpaid income taxes over claims of general creditors in an insolvent decedent's estate, it was said that under section 3466 of the Revised Statutes, 31 U. S. C. §191, the United States has priority over a general creditor for the payment of Federal income taxes out of the assets of an insolvent estate of a decedent who died domiciled in this State; that the purpose of this election of the Federal statute is to secure adequate revenue to sustain public burdens and to that end it must be construed liberally; and that section 13 (a) of our Fiduciaries Act of 1917, which prescribes the order in which the debts of a decedent should be paid, is subordinate to the Federal statute. Again, in Gobrecht's Estate, 47 D. & C. 134, it was held that a claim by the Government for unpaid income taxes in a decedent's insolvent estate had priority over all debts of decedent except reasonable funeral expenses and expenses of administration. In addition to funeral and administration expenses, it is clear that the widow's exemption is also paramount to the Government's claim for taxes: Jones' Estate, 84 Pa. Superior Ct. 170. It was said in Gobrecht's Estate, supra, that in the distribution of funds realized in the insolvent estate of a decedent, debts due the United States must, under section 3466 of the Revised Statutes, be first paid ahead of all other debts of decedent, and that unpaid Federal income taxes upon income earned in the lifetime of a decedent constitute a debt of his estate entitled to priority in payment over other debts.

In further connection with this aspect of the case, it is to be noted that the commissioners who drafted

the new Fiduciaries Act of April 18, 1949, P. L. 512 (which admittedly does not apply in this case), saw fit to take cognizance of the Government's right to priority in the payment of debts of a decedent by inserting in section 622 of the new act the phrase, "subject to any preference given by law to claims due the United States". Undoubtedly, the weight of authority in Pennsylvania is to the effect that unpaid taxes due the Government have priority over all other debts in an insolvent decedent's estate, except funeral and administration expenses and the widow's exemption when claimed.

All of the cases cited and referred to above either involve claims for taxes entirely dissimilar to those with which we are here concerned, or, where they have to do with unpaid Federal income taxes, the question is one of priority over other debts of an insolvent rather than whether or not such taxes should be paid as "just debts" of a solvent taxpayer. For this reason none of them exactly fits the present situation. The few cases which hold by way of dicta that taxes are not debts contain the statement that, "As the obligation to pay taxes does not rest upon any contract express or implied, or upon the consent of the taxpayer, a tax is not a debt in the ordinary sense of the word". If this reasoning were followed to its logical conclusion, no obligations of a decedent except those contracted for or consented to by him in his lifetime would be "just debts" of his estate after his death. And yet our law undoubtedly considers such obligations as funeral expenses, expenses of last illness, administration expenses, cost of care and maintenance of an incompetent in a public institution, judgments rendered in actions involving torts of various kinds, etc., as *debts* of the estate of a decedent. Except for setting up a statutory order of preference, the law makes no distinction between debts of a decedent contracted for or consented

to by him in his lifetime and those which arise out of events over which he had no control.

Clearly, settlor intended to include as just debts all obligations for which she should be personally liable whether contracted for or not. Reference is made to the many connotations or definitions of the word "debts", none of which include the element of voluntary contract. Particularly, see the definition in Webster's New International Dictionary (page 678) :

"DEBT: That which is due from one person to another, whether money, goods, or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; an obligation or liability."

It necessarily follows logically that when a decedent in a deed of trust and in a will, such as here, refers to "just debts" and directs that they be paid, the term is not used in its ordinary or narrow sense but is to be given its broader meaning and made to include all obligations arising either before death or thereafter, whether contracted for or consented to by decedent during life or not.

The record discloses that deceased settlor's brother, Samuel Woffindin, is sole residuary legatee under her will, which has been probated in Montgomery County, but he has only a minor interest under the deed of trust. Much testimony and other evidence was adduced at the audit in an attempt to show that the brother, who had control of settlor's financial affairs for a period of several years during her lifetime, wrongfully withheld payment of the income taxes in order to enhance the value of the testamentary estate for his own benefit. Therefore, it is contended that such taxes should not now be charged to this trust, but rather they should be charged against his interest in the testamentary estate. The evidence, among other things, discloses that an abortive attempt was made in 1943, by the sisters of settlor, who are the beneficiaries of this

trust, to have settlor declared an incompetent and to have a guardian appointed for her estate. It was not until 1946, less than a year before she died, that she was legally declared to be an incompetent and Ambler Trust Company was appointed guardian. During the period from 1938 to 1946, when decedent is alleged to have been a person who might be or become the victim of designing persons and incompetent to handle her own financial affairs, the brother, Samuel Woffindin, had complete charge of her property and it is alleged that in 1942 he transferred in excess of $27,000 from her joint account with him to a new account in his name and later expended most of this fund for his own purpose.

In disallowing the claim for unpaid income taxes as "debts" of deceased settlor, the auditing judge ignored as irrelevant the evidence relating to the mental competency of decedent and the alleged overreaching by the brother for his own unjust enrichment. He rested his conclusion entirely upon the legality of a narrow construction of the word "debts". Although the residuary beneficiaries under the deed did not file exceptions to the refusal of the auditing judge to pass upon this question, they filed a petition for reargument after the opinion and decree were filed sustaining the exceptions to the adjudication involving the construction of the words, "just debts". We regard such petition for reargument as tantamount to the filing of such exceptions and dispose of the questions involved accordingly.

The theory of exceptants is that the auditing judge should have declared Woffindin constructive trustee of such of the income of the life tenant which came into his possession or under his control and which should have been used to pay these income taxes currently, thereby increasing settlor's testamentary estate of

which Woffindin is the chief beneficiary, whereby he was enabled to unjustly enrich himself.

The question thus presented is whether or not this court has and should take jurisdiction over what amounts to a claim of subrogation by these exceptants or the accountant under the deed of trust on their behalf against Samuel Woffindin, that he should be declared a constructive trustee of life tenant's income thus received by him and that his interest under the deed of trust be applied to the payment of the Federal income taxes which are now declared to be debts of the estate and payable by the accountant from the fund before us.

We have grave doubt as to our jurisdiction. The excellent brief filed by Mr. Van Dusen and his earnest argument have failed to convince us that we have jurisdiction. The legislation and the cases which he cites indicate the broad authority this court possesses, once it obtains jurisdiction over a fund, to decide practically all matters, collateral or otherwise, which stand in the way of distribution: Gibson Estate, 153 Pa. Superior Ct., 413; Bucknor's Estate, 136 Pa. 23; Gatins Estate, 159 Pa. Superior Ct. 563; Shallcross' Estate, 13 Philadelphia 374; Alexander's Estate, 214 Pa. 369; Boles' Estate, 316 Pa. 179. Included among the powers which this court is declared by these cases to possess is jurisdiction over a claim of subrogation against a distributee. However, in all of these cases the subrogation and other types of claims are in liquidated sums representing fixed debts. Here, however, an *accounting is necessary of funds not before the court* to determine the amount due, if any, and furthermore we are asked to declare distributee a constructive trustee of a parol trust or of a trust de son tort. The authorities denying our jurisdiction in these types of trusts are numerous: Shaffer's Estate, 21 D. & C. 90; see also Hunter's Pennsylvania Orphans' Court Commonplace

Book, vol. II, p. 1317, sec. 1c, and cases cited thereunder.

The impropriety of our assuming jurisdiction, were we to decide that we possess it, is the controlling factor in this decision. The issues involved have two aspects, the first of which includes the questions of fact and of law, the determination of which would result in a judgment for or against the claim, and, secondly, the consequent award of Samuel Woffindin's interest in this estate in partial satisfaction of such claim, which would be tantamount to an execution were we to decide against him. Samuel Woffindin's interest in the fund before us is two $1,000 par value bonds. The claim is approximately $4,000. The testamentary estate, which is in the Orphans' Court of Montgomery County, is very substantial and capable therefore of completely satisfying such claim when and as established. There is pending in the Montgomery County courts an equity proceeding brought by the executor of Mrs. Garrett's estate seeking an accounting from Samuel Woffindin of a sum of approximately $28,000 which action includes the issues herein raised. The parties reside in Montgomery County. We are unanimously of the opinion, therefore, that the appropriate courts in Montgomery County are the proper tribunals to try this issue and not this court. Under the authority of Keasbey's Trust Estate, 342 Pa. 439, we withhold any final definitive action on exceptants' request and dismiss their exceptions pro forma to this item of the adjudication, directing at the same time that the record be remitted to the auditing judge for the purposes herein stated.

In order, however, that aid be extended to these exceptants, we direct withholding from distribution of the gift to Samuel Woffindin in order to afford exceptants full and fair opportunity to pursue him in the courts of Montgomery County or elsewhere, provided

that such action be taken expeditiously and promptly, leave being given thereby to Samuel Woffindin to apply to this court within six months from the date of this decree for an order of distribution should exceptants not take action against him by that time.

One set of exceptions refers to the action of the auditing judge in failing to withhold the sum of $5,000 as a reserve for the payment of possible Federal estate tax. This exception was compromised at the bar of the court at the time of reargument by the parties agreeing by their counsel that the sum of $2,500 be set aside for this purpose and that the exceptions involved be withdrawn.

With respect to the exceptions having to do with the action of the auditing judge in allowing as a "just debt" only $600 of a total bill of $1,202.10 for funeral expenses of deceased settlor, the court is of the opinion that he was well within his rights in this regard and there was no abuse of discretion on his part. His reasons for not allowing the full amount of the claim are amply set forth in the adjudication and we do not deem it necessary to repeat them herein. His ruling is well supported by the evidence and we decline to disturb it.

Other exceptions relate to the manner in which the auditing judge awarded "accrued income" amounting to $399.22. The deed provides that upon the death of grantor "principal and accrued income" should be paid and delivered to the remaindermen. Here again, as in the use of the term "just debts", settlor gives no definition as to what she means by "accrued income", but fortunately in this instance we can glean some evidence of her intention from other portions of the writing. As the auditing judge observed, it is significant to note that she treated the terms "accrued interest" and "accrued income" as synonymous, for in paragraph (b) on page 2 of the deed she directed the

trustee upon her death to deliver to her sister two bonds with "accrued interest thereon", and further provided that should the sister predecease her "the share of principal and accrued income herein given to her" should pass as part of the residuary estate. This interchangeable use of the two expressions appears in other provisions of the deed. Furthermore, as the auditing judge pointed out, the original assets transferred under the deed consisted of bonds and stock and it was natural for settlor to contemplate that at the moment of her death there would be interest accruing but not yet paid on some of the bonds or potential dividends on some of the stocks not yet declared. It is natural to assume that, rather than require the trustee to attempt to segregate the bond interest or stock dividends not yet payable from the bonds and stocks themselves, she merely directed that the "accrued interest" or "accrued income" be transferred with the stock or bond which gave rise to the accrual. We agree with the auditing judge that, as thus construed, the phrase "principal and accrued income" has no application to income actually collected by the trustee but not yet paid over to settlor-life tenant prior to her death, and such income should now be awarded to her executor. But any such income accrued to the date of death and not yet collected by the trustees should be awarded with principal to the remaindermen under the deed.

Exceptions 1, 2 and 3 filed by the executor of the estate of Elizabeth Garrett, deceased, are sustained. Also sustained are exceptions 1 and 2 filed by the United States Attorney for the Eastern District of Pennsylvania on behalf of the Collector of Internal Revenue of the United States for the First Collection District of Pennsylvania. Exceptions of the executor of the estate of Elizabeth Garrett, deceased, nos. 4, 5, 6 and 7, relating to the payment of funeral expenses,

and exceptions 8, 9, 10 and 11, relating to the award of accrued income to date of settlor's death, are without merit and are accordingly dismissed. Exceptions 12 and 13 have been withdrawn by agreement of the parties. The petition for reargument filed by Robert S. Merkel and Florence Hampshire is dismissed pro forma and the record recommitted to the auditing judge for further consideration in accordance with this opinion.

The adjudication as thus modified is confirmed.