## PRICE, RECEIVER, *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 454. Submitted November 23, 1925.—Decided January 11, 1926.

1. Taxes due the United States are "debts" within the meaning of
   Rev. Stats. § 3466, giving the United States priority in certain
   cases. P. 499.
2. Rev. Stats. § 3466 is to be construed liberally. P. 500.
3. The joining by a defendant corporation in securing a receivership
   in a suit by a simple contract creditor, to take over the defendant's
   property and business for the purpose of conserving them and pay-
   ing creditors, amounts to a voluntary assignment, within the mean-
   ing of § 3466, Rev. Stats., where the business is in a failing con-
   dition and turns out to be insolvent so that the assets are a trust
   fund for the creditors according to their priorities. P. 502.

6 Fed. (2d) 758, affirmed.

CERTIORARI to a judgment of the Circuit Court of Ap-
peals affirming an order of the District Court directing a

receiver to pay claims of the United States as priority claims. See *Liberty Mutual Co.* v. *Johnson Shipyards,* 6 Fed. (2d) 752; *Stripe* v. *United States, post,* p. 503.

*Mr. Godfrey Goldmark,* for petitioner.

The priority of the United States does not stand upon any sovereign prerogative, but exclusively upon the provisions of the statute. *United States* v. *Fisher,* 2 Cr. 358; *United States* v. *Bank of North Carolina,* 6 Pet. 29; *United States* v. *Canal Bank,* 3 Story, 79 Fed. Cas. No. 14, 715; *United States* v. *Oklahoma,* 261 U. S. 253.

An examination of the earlier statutes, now §§ 3466 and 3467, in the light of their underlying purpose, will reveal that they were intended primarily to secure the prior payment of revenue where the debtor was divested of his property in the methods provided, and only later were extended to secure prior payment of all obligations to the United States, whatever their nature, and were intended to impose a personal liability upon executors and trustees, in the event that the priority was ignored.

Whether revenues are collected through or without the exaction of a bond, in either case, the statute measures the extent of the priority. *United States* v. *Chamberlain,* 219 U. S. 250.

*Lane* v. *Oregon,* 7 Wall. 71 and *Meriwether* v. *Garrett,* 102 U. S. 472, distinguished.

In this case, the debtor has not been divested of its property in any of the methods which the statute prescribes. Therefore, the priority created by § 3466 is inapplicable.

Section 3466 does not create a priority for ordinary debts or for taxes, where the assets of a corporation are distributed in a judgment creditor's suit or equity receivership. *United States* v. *Oklahoma,* 261 U. S. 253; *United F. & G. Co.* v. *Strain,* 264 U. S. 570.

The appointment of a receiver on a judgment creditor's bill is not a divesting of the debtor's title to all his prop-

erty within the purview of the Act. *Beaston* v. *Farmers' Bank,* 12 Pet. 102; *Pa. Steel Co.* v. *N. Y. City Ry.* 198 Fed. 721; *Pusey Jones Co.* v. *Hanssen,* 261 U. S. 491; *Metropolitan St. Ry. Receivership,* 208 U. S. 90; *Luhrig Collieries* v. *Interstate Coal Co.,* 281 Fed. 265. The present suit is not the equivalent of a general assignment. *Laclede Bank* v. *Schuler,* 120 U. S. 511; *Empire Metallic Bedstead Co.,* 98 Fed. 981; *Quincy R. R.* v. *Humphreys,* 145 U. S. 82; *Great Western* v. *Harris,* 198 U. S. 561; *Lion Bonding Co.* v. *Karatz,* 262 U. S. 77; *Zacher* v. *Fidelity Trust Co.,* 106 Fed. 593.

The admission of the allegations of the bill and the consent to the appointment of a receiver are not the commission of acts of bankruptcy within the meaning of § 3466. The defendant has not committed an act of bankruptcy within the provisions of the Bankruptcy Act of 1898. There is no proof that insolvency existed at the time of the filing of the bill or that the bill was filed because of this condition. This being so, *United States* v. *Oklahoma* and *Strain* v. *United States, supra,* are conclusive to the effect that the receiver was not appointed because of insolvency. To the same effect are: *Matter of Spalding,* 139 Fed. 244; *Matter of Valentine Pohl Co.,* 224 Fed. 685; *Matter of William S. Butler & Co.,* 207 Fed. 705. The fact that the defendant consented does not make the suit collusive or other than the ordinary law suit in which the defendant corporation is the defendant and not the plaintiff. Even if the defendant did commit an act of bankruptcy under the 1898 Bankruptcy Act, the United States would not be entitled to priority, inasmuch as the defendant has not been divested of its property in any proceeding based upon the alleged act of bankruptcy.

Congress has by the Revised Statutes provided a comprehensive method for the collection of taxes and has provided for a lien and distraint; and as the provisions of Rev. Stats. §§ 3186, *et seq.* as amended in 1913,

were not complied with in this case prior to the receivership, a tax claim is not entitled to priority. The facts that the suit was instituted by one creditor on behalf of all, a judgment waived, and the other creditors enjoined from proceeding to judgment, cannot increase the rights of the United States. *American & British Securities Co.* v. *Mfg. Co.*, 275 Fed. 121.

This suit is a mere equitable levy in favor of all creditors, and they all have the same rights as if they were separate judgment creditors, namely, the right to satisfy their claims ahead of the Government, because the latter did not comply with § 3186 as amended in 1913. As the two common law prerogatives are embodied in §§ 3466 and 3186, *et seq.*, and as no priority exists under the terms of either, there can be no priority at all.

*Solicitor General Mitchell* and *Messrs. Jerome Michael, Henry Gale,* and *Ralph F. Fuchs,* Special Assistants to the Attorney General, for the United States.

By virtue of Rev. Stats. 3466 the Government is entitled to payment of its taxes in advance of the claims of general creditors in an equity receivership proceeding instituted with the defendant's consent.

The income tax involved in this case was entitled to priority' of payment by virtue of the provisions of the Revenue Acts by which it was levied and under which it was assessed, by virtue of the provisions of Rev. Stats. 3186, and because, Congress having established an extra-judicial system for the collection of the internal revenue which was designed to insure, and which in the absence of judicial interference will normally result in, its prior payment, it is the plain duty of the courts either to permit that system to function or, in the alternative, to direct the payment of taxes in advance of the claims of general creditors. If further evidence is required that Congress intended the provisions of the Revenue Acts to apply

.equally to all. corporations, whether solvent or insolvent, whether in receivership or under the management of the corporate officers, it is to be found in those sections of the Revenue Acts which require a receiver who is operating the property or business of a corporation to make returns for such corporation, and provide that any tax due thereon is to be collected " in the same manner as if collected from the corporation." *Swarts* v. *Hammer,* 194 U. S. 441.

. If receivership proceedings had not intervened, the Government would have acquired a lien upon all the property of the Gidding Company which would have been valid against its general creditors. It is equally clear that the appointment of a receiver can not render the Government impotent to assess or to demand the payment of taxes. But if the Government can demand the payment of a tax, it can also acquire a lien therefor in spite of a receivership, for the result of a demand followed by failure to pay is prescribed by statute. It can not be prescribed by the courts.

The argument that a statutory lien for taxes can and does attach after the appointment of a receiver is fortified by the fact that even before assessment and demand the Government's lien is inchoate. *Henderson* v. *Mayer,* 225 U. S. 631; *Kane & Co.* v. *Kinney,* 174 N. Y. 69; *Hildreth Granite Co.* v. *City of Watervliet* (N. Y.), 161 App. Div. 420; *Crane Co.* v. *Pneumatic Signal Co.* (N. Y.), 94 App. Div. 53. Neither the complainant, nor any other general creditor, nor the receiver, is a judgment creditor within the meaning of R. S. 3186.

There is nothing in the doctrine of equitable execution or in the character or purpose of a receivership proceeding initiated by general creditors, to prevent the creation or perfection of statutory liens, including tax liens, after the bill is filed. *Pennsylvania Steel Co.* v. *New York City Ry.,* 198 Fed. 721; *Filene's Sons Co.* v. *Weed,* 245

U. S. 597; *Stevens v. New York & O. M. R. Co.,* 13 Blatch. 104; *Central Trust Co.* v. *Wabash, St. L. & P. Ry.,* 26 Fed. 11.

If, as this Court held in *Re Tyler,* 149 U. S. 164, it is the duty of tax collectors to refrain from the seizure and sale of property in the custody of the courts, it would seem to be equally the duty of the courts to direct the prior payment of the Government's taxes. A receivership may justify a variation of the means; it can not justify a change in the result. The application of the doctrine that a court of equity must direct the prior payment of taxes in a receivership proceeding if it stops the executive machinery for their collection, extends as well to past as to current taxes, as well to taxes which have not become, as to taxes which are, liens on the property in the court's possession. *Ledoux v. La Bee,* 83 Fed. 761; *Coy* v. *Title Guarantee & Trust Co.,* 220 Fed. 90; *Bear River Co.* v. *City of Petosky,* 241 Fed. 53; *Greeley* v. *The Provident Sav. Bank,* 98 Mo. 458; *George* v. *St. Louis Ry. Co.,* 44 Fed. 117; *Gaither* v. *Stockbridge,* 67 Md. 222.

Independently of statute, the United States were entitled to priority of payment of both the customs duties and the income tax involved in this case, because priority of payment inheres in the very concept of a tax and the right to priority of payment of taxes is an attribute of the sovereignty of the Government. In levying taxes, the Government is exercising one of the most important of its sovereign powers. *Nicol* v. *Ames,* 173 U. S. 509. A tax is not a debt. It is an impost levied for the support of the Government. It operates *in invitum. Meriwether* v. *Garret,* 102 U. S. 472; *Crabtree* v. *Madden,* 54 Fed. 426; *City of Camden* v. *Allen,* 26 N. J. L. 398. Taxes are of higher order than debts, even than debts due the Government, and in respect to them the Government is not a creditor. *United States* v. *Eggleston,* Fed. Cas. No.

15027; *Food Controller v. Cork,* (1923) A. C. 647; *United States* v. *McHatton,* 266 Fed. 602; *State* v. *Rowse,* 49 Mo. 586. The claim for taxes is paramount to all other claims against the citizen. *Greeley* v. *The Provident Sav. Bank, supra; Coy* v. *Title Guarantee Co.,* 220 Fed. 90; *Springer* v. *United States,* 102 U. S. 586; *Liberty Ins. Co.* v. *Johnson Shipyards Corp.,* 6 Fed. (2d) 752; *Minnesota* v. *Central Trust Co.,* 94 Fed. 244.

While the Government does not claim to be possessed of the right to priority of payment of its taxes as a heritage from the British Crown, there is nevertheless a solid foundation for the proposition that the United States possess as sovereign rights those prerogatives of the kings of England which the latter enjoyed as representatives of the English people and which are not incongruous with our republican form of Government. *United States* v. *Thompson,* 98 U. S. 486; *Dollar Savings Bank* v. *United States,* 19 Wall. 227. The fact that the Government has no sovereign right to priority of payment of its debts is immaterial. *Food Controller* v. *Cork,* (1923) A. C. 647; *Comm'rs of Taxes* v. *Palmer* (1907) A. C. 179; *Baxter* v. *Baxter,* 23 S. C. 114; *State* v. *Rowse,* 49 Mo. 586. The fact that the Government has never adopted the common law is immaterial. Rev. Stats. 3466 does not measure the Government's right to priority for taxes.

Mr. JUSTICE BUTLER delivered the opinion of the Court.

October 2, 1923, Charles H. Mears, a simple contract creditor, brought suit on behalf of himself and other creditors against J. M. Gidding & Company, a New York corporation. Among the facts alleged in the complaint are these. Defendant was engaged in the business of importing and selling wearing apparel at retail in New York and four other cities. It owed plaintiff $10,000 on a promissory note; its debts were large, and it was without money to pay those then due and shortly to become due.

If its assets could be sold in the usual course of business they would be in excess of its debts. Some of the creditors were pressing their claims, and others had commenced suit; and, if the assets were not taken into judicial custody, some creditors might obtain inequitable preferences as against plaintiff and other creditors; and the assets might not to be enough to pay all. And, averring no adequate remedy at law, the complaint prayed the court to determine the rights of all creditors, and to appoint a receiver to take possession and control of all defendant's assets, and that, when just and proper, the assets be ordered sold and the proceeds distributed to those entitled thereto. On the same day, defendant filed its answer admitting the allegations and joining in the prayer of the complaint. The court immediately entered its decree granting the relief prayed, and appointed appellant temporary receiver with authority to take possession and control of, and to make disbursements to preserve, the assets. January 9, 1924, the court appointed appellant permanent receiver. Thereupon, the assets were found insufficient to pay all the claims; general creditors will not recover more than 40 per cent.

The United States filed proof of claims for income taxes for the year 1920, and for unpaid customs duties. A special master sustained the claim of the United States to priority, and fixed the amount of the income tax at $11,331.07, and the amount of the duties at $1,086.70. The District Court directed appellant, out of the assets of defendant, to pay these amounts as priority claims. The Circuit Court of Appeals affirmed the decree on the authority of *Liberty Mutual Insurance Company* v. *Johnson Shipyards Corporation,* 6 Fed. (2d) 752. The case is here on writ of certiorari. § 240, Judicial Code.

The word "debts" as used in R. S. § 3466 includes taxes.

The claim of the United States does not rest upon any sovereign prerogative; but the priority statutes were

enacted to advance the same public policy which governs
in the cases of royal prerogative; that is, to secure ade-
quate public revenue to sustain the public burdens.
*United States* v. *The State Bank of North Carolina,* 6
Pet. 29, 35. And to that end, § 3466 is to be construed
liberally. Its purpose is not to be defeated by unneces-
sarily restricting the application of the word " debts "
within a narrow or technical meaning. Cf. *Miller* v.
*Robertson,* 266 U. S. 243, 248. The meaning properly
to be attributed to that word depends upon the connec-
tion in which it is used in the particular statute and the
purpose to be accomplished.

In the absence of another remedy made exclusive, an
action of debt lies to recover taxes where the amount due
is certain or readily may be made certain. *United States*
v. *Chamberlain,* 219 U. S. 250, 262; *Savings Bank* v.
*United States,* 19 Wall. 227, 239; *Stockwell* v. *United
States,* 13 Wall. 531, 542; *Meredith* v. *United States,* 13
Pet. 486, 493; *United States* v. *Washington Mills,* 2 Cliff.
601, 607; *United States* v. *Pacific Railroad,* 4 Dill. 66.

Section 3466 of the Revised Statutes is derived from
early statutes enacted for the collection of taxes.* The
Act of 1789 permitted bonds to be given for payment of

---

* "An Act to regulate the Collection of the Duties imposed by law
on the tonnage of ships or vessels, and on goods, wares and merchan-
dises imported into the United States," approved July 31, 1789, §
21, c. 5, 1 Stat. 29, 42. "An Act to provide more effectually for the
collection of the duties imposed by law on goods, wares and merchan-
dise imported into the United States, and on the tonnage of ships or
vessels," approved August 4, 1790, § 45, c. 35, 1 Stat. 145, 169. "An
Act for raising a farther sum of money for the protection of the fron-
tiers, and for other purposes therein mentioned," approved May 2,
1792, § 18, c. 27, 1 Stat. 259, 263. "An Act to provide more effectu-
ally for the Settlement of Accounts between the United States, and
Receivers of public Money," approved March 3, 1797, § 5, c. 20, 1
Stat. 512, 515. "An Act to regulate the collection of duties on im-
ports and tonnage," approved March 2, 1799, § 65, c. 22, 1 Stat.
627, 676.

customs duties, and provided that in case of default the collector should prosecute suits for recovery, and that in all cases of insolvency, or where any estate in the hands of executors or administrators should be insufficient to pay all the debts of the deceased, the debt due to the United States on any such bonds should be first satisfied. The Act of 1790 superseded the earlier Act, but retained the same priority provision. The Act of 1792 gave to sureties the right of subrogation (see R. S. § 3468); and it limited priority to cases in which insolvency should be manifested in one of the modes stated. Prior to the passage of the Act of 1797, an internal revenue had been established and extensive transactions had taken place, in the course of which many persons had become indebted to the United States. *United States* v. *Fisher*, 2 Cr. 358, 392. Up to that time, the priority applied only to cases of default on customs bonds. By that Act, it was extended to cases involving " any revenue officer or other person hereafter becoming indebted to the United States by bond or otherwise." The Act of 1799 introduced the provision making every executor, administrator, assignee or other person answerable for failure to pay the United States first. See R. S. § 3467. The revision did not involve any substantial change of phraseology and did not work any change in the purpose or meaning of the priority acts. *Buck Stove Company* v. *Vickers*, 226 U. S. 205, 213. There is no reason for any distinction in respect of priority between taxes and other amounts owing to the United States. Indeed, it would be quite without reason to deny priority in case of claims for taxes due from taxpayers, and to give priority to claims against revenue officers and others on account of taxes collected by them.

*Lane County* v. *Oregon*, 7 Wall. 71, and *Meriwether* v. *Garrett*, 102 U. S. 472, are sometimes cited, and expressions found in the opinions are quoted, to show that taxes are not debts. But when regard is had to the questions

decided in these cases, it is clear that they do not sustain the view that, as used in § 3466, the word "debts" does not include taxes due the United States. The question in *Lane County* v. *Oregon* was whether under the Acts of Congress making United States notes "legal tender in payment of all debts," the State was bound to accept such notes in payment of taxes required by its own laws to be paid in gold and silver coin. The court held that the Acts had no reference to taxes imposed by state authority. There were two clauses which were intended to give currency to the notes. In one of them, taxes were plainly distinguished from debts; and it was held that the word "debts" in the other was not intended to include taxes. In *Meriwether* v. *Garrett*, it was held that taxes levied before the repeal of a city charter—other than those levied under lawful contract or judicial direction—could not be continued in force by the court after the repeal of the charter; that they had none of the elements of property and could not be seized by judicial process, and could only be collected under authority from the legislature.

Defendant made a voluntary assignment of its property within the meaning of § 3466.

By answering and joining in the prayer of the complaint, defendant coöperated with the plaintiff to secure the appointment of a receiver to whom it immediately handed over possession and control of all its property and business. While in effect the complaint alleged that defendant was solvent, the facts set forth indicate that it was in a failing condition. And it was found to be insolvent within a short time after the appointment of the receiver. When the assets turned out to be less than the debts, the creditors were entitled to have them dealt with as a trust fund and distributed among them according to their rights and priorities. Under the statute, claims of the United States must first be satisfied. *Bramwell* v.

*United States Fidelity & Guaranty Company, ante,*
p. 483, and *United States* v. *Butterworth-Judson Corporation, post,* p. 504.

<div align="right">

*Decree affirmed.*