In re WILSON.

In re DOWELL–WILLIS CHEVROLET CO.

Nos. 3770, 3726.

District Court, N. D. Texas, Dallas Division.

Jan. 24, 1938.

ATWELL, District Judge.

The referee allowed as an unsecured claim $175, which had been loaned by the Farm Credit Administration, to the bankrupt, but disallowed it as to priority.

The United States feeling aggrieved filed its petition for review.

The Act of June 19, 1934, 73d Congress, U.S.Statutes at Large, vol. 48, pt. 1, p. 1056, provides that "To meet the emergency and necessity for relief in stricken agricultural areas, to remain available until June 30, 1935, $525,000,000, to be allocated by the President to supplement the appropriation heretofore made for emergency purposes and in addition thereto for (1) making loans to farmers for, and/or (2) the purchase, sale, gift or other disposition of, seed, feed, freight, summer fallowing and similar purposes; expenditures hereunder and the manner in which they shall be incurred, allowed, and paid, shall be determined by the President * * *."

The Governor of the Farm Credit Administration, set up pursuant to this act of Congress, loaned this money, which was the money of the United States.

In the matter of Dowell-Willis Chevrolet Company, No. 3726 Bankruptcy, the Federal Housing Administration Act, through one of its attorneys, filed a claim for $259.06, which was allowed as an unsecured claim, but denied priority by the referee.

The act which relates to the Federal Housing Administration was passed June 27, 1934 by the 73d Congress and is shown at page 1248 of vol. 48, p. 1, United States Statutes at Large, 12 U.S.C.A. § 1709. "The Administrator is authorized, upon application by the mortgagee, to insure as hereinafter provided any mortgage offered to him within one year from the date of its execution which is eligible for insurance as hereinafter provided, * * * to make commitments for the insuring of such mortgages, prior to the date of their execution or disbursement thereon: Provided, That except with the approval of the President, (1) the aggregate principal obligation of all mortgages on property and low-cost housing property and projects * * * shall not exceed $1,000,000,000, and (2) the insurance of mortgages on property and low-cost housing projects constructed after the passage of this act [chapter] shall be limited to a similar amount." The Administrator is authorized and directed to make such rules and regulations as may be

John A. Erhard, Asst. U. S. Atty., and J. L. Backstrum, Sp. Atty., both of Dallas, Tex., for the claims.

necessary to carry out the provisions of the act.

The promissory note in the first instance is payable to the Governor of the Farm Credit Administration at Washington, D. C., and recites that it is given as evidence of a loan made by the Governor of the Farm Credit Administration.

The proof in the second case, in affidavit form, advises that the Administrator, pursuant to the power given him, insured the Springfield National Bank of Massachusetts against losses, which it might sustain as a result of loans, advances of credit, or purchases of obligations representing loans and advances made by it for the purposes of the act, and that it became the owner and holder of an obligation created for money so borrowed, by the bankrupt. That in pursuance of the insurance provided for in the act, the United States paid to the Springfield National Bank the amount that was due it by reason of its holding of the said note of the said bankrupt, and that such payment was made by a draft on the treasury of the United States.

Section 64b of the Bankruptcy Act, as amended, 11 U.S.C.A. § 104(b) provides: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * * (7) debts owing to any person who by the laws of the * * * United States is entitled to priority: Provided, That the term 'person' as used in this section, shall include * * * the United States."

The Governor of the Farm Credit Administration in the first case, and the Federal Housing Administrator in the second case, assert that the debts are entitled to priority under section 3466 of the Revised Statutes of the United States, 31 U.S.C.A. § 191, which provides, "Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall first be satisfied." In Federal Housing Administrator v. Moore, 9 Cir., 90 F.2d 32, it was held that such contention cannot prevail. The court thought that, "the gentleman is not the United States. The United States is not a party to the proceeding. That the bankrupt was never indebted to the United States. The indebtedness was to the bank which held its obligation." The court said (page 34) that "there is no reason why, in a bankruptcy court or elsewhere, the United States should call itself, 'Federal Housing Administrator.' "

The Federal Housing Administrator had, by reason of the payment to the Springfield bank, only such rights as that bank had, and that bank never had a priority, but, when the United States became the assignee, it was its debt.

It seems to me that, whatever may be said about the propriety of the United States engaging in proceedings such as are exhibited here, the big fact is that it was the money of the United States that went into each claim. In the first instance, it was loaned directly to the bankrupt. In the second instance, it guaranteed the obligation of the bankrupt so that a bank would accept it and the United States was bounden to redeem such obligation when the citizen made default. In both instances the money came out of the treasury of the United States. The Congress of the United States appropriated it. The President of the United States, ostensively, set up the agency through which it passed from the treasury of the United States, into the hands of the citizen. The United States is really the party at interest. In each instance, the Housing Administrator and the Governor of the Farm Credit Administration was merely an agent, or, intermediary through which the money passed from the treasury to the citizen. That those agents were given names other than the United States does not alter the fact that actually and in truth it was the money of the United States in each instance, and the debts are due the United States.

It is an unnecessary and artificial refinement to claim that the debt is due the agent in either instance. The fact that the agent himself, under the act of Congress, might sue and be sued, does not strip from the United States the right to sue in its own name.

The case is quite different from those cases wherein corporations are created and stock is held by others than the United States. In such an autonomy, the debt is due the corporation and the corporation distributes its earnings to those who hold its stock. There is no artificial entity here at all. The United States is the whole thing. It furnishes the money, and the President appoints certain persons to put it out. Such persons are to figure out the plan, the sort of notes, and the machinery

that will accomplish the purpose of the appropriation.

Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191, mentioned above, became the law in 1797, and has been liberally construed to include not only direct indebtedness to the United States, but any form of indebtedness, whether legal or equitable, or whether based upon a contract, judgment, or assignment. United States v. Fisher, 2 Cranch 358, 2 L.Ed. 304; Lewis v. United States, 92 U.S. 618, 23 L.Ed. 513; Howe v. Sheppard, Fed.Cas.No.6,772, 2 Sumn. 133; Bramwell v. United States F. & G. Co., 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368; Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373.

■ I am unable to discover any different rule growing out of different classes of debt. A debt is a debt. A debt may arise out of a business transaction, or, out of an act of sovereignty. Priority comes out of the law, and not upon any assertion of the powers of sovereignty. United States v. State Bank of North Carolina, 6 Pet. 29, 8 L.Ed. 308; Whan v. Green Star S. S. Corporation, 2 Cir., 22 F.2d 483; certiorari denied Adams v. U. S., 276 U.S. 629, 48 S.Ct. 322, 72 L.Ed. 740.

■ It has been suggested that if the United States acts as a merchant, it ought to be content with preserving a consistency of character; but consistency is a lost jewel in government. The government regulations, statutes, and movements, are dependent upon the acts of the Congress made under and within the terms of the controlling Constitution, and if, forsooth, the judgment of the Congress is altered, or changed, with the passing of the years, as to the wisdom of certain legislation, it has the power to change such legislation, even though the change may be wholly inconsistent with and directly opposed to that which preceded. We frequently witness the repeal of laws, the amending of laws, the growth and expansion of laws. A general provision which gives the United States priority for debts which are due it must be so read as to include whatever debts it owns as a Constitutional creditor.

■ We do not need to be unusually wise to discover the reason for such proclamation. The reason why the statute gives priority to the United States, when debts are due it by insolvents, is to protect the credit and finances of the United States.

Price v. United States, 269 U.S. 492, 46 S. Ct. 180, 70 L.Ed. 373. U. S. v. State Bank of North Carolina, 6 Pet. 29, 8 L.Ed. 308.

■ The court may not construe a clearly plain statute in such a way as to defeat it. Inequity to other creditors is beside the question. The United States has declared its purpose to stand first, and all others must take notice. The United States is all of us. A benefit to it is a benefit to all.

Mr. Justice Marshall, with his usual clarity and force, said that, "If the intention of the Legislature be expressed in terms which are sufficiently intelligible to leave no doubt in the mind, when the words are taken in their ordinary sense, it would be going a great way to say that a constrained interpretation must be put upon them, to avoid an inconvenience which ought to have been contemplated in the legislature when the act was passed, and which, in their opinion, was probably overbalanced by the particular advantages it was calculated to produce." U. S. v. Fisher, 6 U.S. 358, 388, 2 Cranch 358, 2 L.Ed. 304.

These claims are unlike the cause that was considered and ruled in the United States Shipping Board Emergency Fleet Corporation v. Wood, 258 U.S. 549, 42 S. Ct. 386, 66 L.Ed. 762. In these claims that we are now thinking about, there is no intermediary corporate ownership. One is payable to "the Administration (the United States)," the other is assigned directly to the United States.

The case we have here is that of two agencies, directed by Congress to carry out a specific purpose, and over which it maintains exclusive and direct control, which agencies have no other powers, such as corporations have, and which had no funds of their own and no form of private control. They must be entitled to claim the priority rights given by statute to the United States, for the United States.

The agencies, through which the funds in each case were loaned, are bound, under the terms of the law, to immediately turn over to the United States treasury any money collected by them. The ownership of funds in the beginning, and funds at the end of the transaction, is in the United States. Neither of the officials has any interest. They hold only for the United States.

I cannot see why the real beneficiary may not be permitted to prove the claim.

In the case of the Federal Housing Administrator, because certain financial institutions hesitated to make insured loans, lest there might be defaults which could not be prosecuted because they were claims against the United States, the Congress amended the act, section 1, August 23, 1935, 12 U.S.C.A. § 1702, so as to permit the Administrator, in his official capacity, to sue and be sued in any court of competent jurisdiction, state or federal. Also it was doubted whether the Administrator, since he was acting for the United States, had power to dispose of property assigned to him in connection with the payment of insurance, or whether he had power to collect and compromise obligations assigned to him in such connection. Thereupon, in section 2, of the act of April 3, 1936, 12 U.S.C.A. § 1703, he was given powers, "until such time as such obligations may be referred to the Attorney General for suit or collection."·

The preservation of the letter of the law should never be permitted to overcome its significant and reasonable spirit. In neither the Wilson nor Dowell-Willis Company case does the temporary Governor of the Farm Credit Administration, or, the temporary Federal· Housing Administrator, have any individual interest whatever in the debts due by those two bankrupts.

We must bear in mind that the claim is made by the United States in each cause. In 3726, it is asserted on a chose in action assigned to the "Federal Housing Administrator, acting on behalf of the United States." In cause 3770 the note which supports the claim of the United States is made payable to the Governor of the Farm Credit Administration. At the top of that note is this statement, "(this instrument is given to the governor, Farm Credit Administration, acting pursuant to the act of Congress, approved June 19, 1934)."

Section 63 of the Bankruptcy Act, 11 U.S.C.A. § 103, provides how debts may be proven, and the proof of these two debts comes under that portion of the section which reads as follows: "Debts of the bankrupt * * * which are * * * a fixed liability, as evidenced by * * * an instrument in writing, absolutely owing at the time of the filing of the petition."

It seems to me that the claims should be allowed as debts due the United States with priority.