UNITED STATES of America

v.

**ESTATE OF George C. YOUNG, Hannah A. Lawler, Executrix; Helen A. Young; Commonwealth of Pennsylvania, Department of Revenue; and Attorney General, Department of Justice, State of Pennsylvania.**

Civ. A. No. 81–3109.

United States District Court,
E.D. Pennsylvania.

Aug. 22, 1984.

Amended Order Oct. 19, 1984.

Mark G. Gellar, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, D.C., Rachel Shao, Asst. U.S. Atty., Philadelphia, Pa., for plaintiff U.S.A.

W. Peter Barnes, Parke, Barnes, Byrne & Spangler, West Chester, Pa., for defendant, Hannah A. Lawler (Ruggiero).

Robert H. Louis, Meltzer & Schiffrin, Philadelphia, Pa., for defendant, Helen A. Young (Gallagher).

Catherine R. Barone, Deputy Atty. Gen., Philadelphia, Pa., for defendant, the Commonwealth of Pa.

## OPINION

LUONGO, Chief Judge.

This is an action brought by the government to foreclose its tax lien against real property owned or transferred by the estate of George C. Young. The government has filed a motion for summary judgment, and defendant Helen A. Young (now Gallagher) has responded with a cross-motion for summary judgment and a petition for costs and attorney's fees under the Equal Access to Justice Act. For the reasons

discussed below, I will grant the government's motion against all defendants, and I will deny the motions filed by Mrs. Gallagher.

## I. *Background*

This litigation marks the climax of an unfortunate series of events in the disposition of the estate of George C. Young. On December 15, 1975, Mr. Young died testate, leaving his entire estate to his niece Hanna Lawler (now Ruggiero), whom he also named as his executrix.[1] At the time of his death, the value of Mr. Young's "total gross estate" was $395,986.91, resulting in a federal gross estate tax liability of $77,-905.36, and a Pennsylvania inheritance tax of $52,221.22.[2] By far the most valuable assets in Mr. Young's estate were his one-half interests in two large tracts of real estate in Newlin Township, Chester County, Pennsylvania. It is against those parcels of land that the federal government now seeks to assert its claim.

Before his death, Mr. Young shared ownership of the real property as tenant in common with his sister-in-law, Mrs. Gallagher. Mr. Young's testamentary disposition caused Mrs. Gallagher to contest probate of the will. Mrs. Gallagher and her daughter Mrs. Ruggiero settled the will contest. The settlement agreement, dated May 17, 1978, provided that Mrs. Gallagher would receive an undivided interest in most of one parcel referred to as the "Farm Tract;"[3] that Mrs. Ruggiero would receive the portion termed the "Development Tract;"[4] that Mrs. Ruggiero was then required to sell the Development Tract and pay to Mrs. Gallagher one-half of any proceeds in excess of $390,000.[5]

While the probate litigation was going on, however, several changed circumstances affecting real estate in the area sharply reduced the value of the Ruggiero land. As recounted in Mrs. Ruggiero's affidavit, "the real estate market began to fall off, interest rates climbed substantially and a landfill dump began operation on a tract of ground immediately adjacent to mine."[6] As a consequence, Mrs. Ruggiero has been unable to dispose of the property for a price even remotely approximating the $304,000 value at which it was appraised at the time of Mr. Young's death.

Meanwhile, both state and federal estate taxes have remained unpaid, and statutory interest has continued to accrue. The federal government made an initial assessment of tax liability in the amount of $72,-764.82 on November 1, 1976, and a supplementary assessment of $5,140.54 on September 11, 1979. A Notice of Lien was filed on July 21, 1980.[7] As of September 30, 1980, the estate remained indebted to the federal government in the amount of $110,649.84, and subsequent charges rendered the estate liable, as of July 1, 1984, for $174,882.35.[8] The Commonwealth of Pennsylvania recorded its inheritance tax lien on May 11, 1981. The Commonwealth's tax was initially assessed at $52,-221.22, and statutory interest charges have increased the Commonwealth's claim by an undetermined amount.

## II. *Government's Motion For Summary Judgment*

In its effort to collect the overdue tax from the Young estate, the government seeks in this proceeding to foreclose its lien

---

**1.** Government's Motion for Summary Judgment, Exhibit G.

**2.** *Id.,* Exhibit B; Memorandum of Law in Support of Commonwealth's Claim that Pennsylvania Inheritance Tax Lien Shares Pro Rata with Federal Estate Tax Lien (hereinafter "Commonwealth Brief") at 1.

**3.** Mrs. Ruggiero, however, retained ownership of her house plus three acres of land on the Farm Tract.

**4.** *See generally,* Government's Motion for Summary Judgment, Exhibit H.

**5.** *Id.*

**6.** Affidavit of Hanna A. Lawler (Ruggiero) at 4.

**7.** Government's Motion for Summary Judgment, Exhibits A, B.

**8.** Although the precise amount of the government's lien is not readily apparent from the record, counsel for the government, at my request, calculated and submitted the estate's aggregate tax burden. No party has objected to the government's calculation.

against the real estate which passed from the estate, via the settlement agreement, to Mrs. Ruggiero and Mrs. Gallagher. Relying on §§ 6321 and 6324 [9] of the Internal Revenue Code, the government argues that there are no disputed issues of material fact, and that it is entitled to judgment as a matter of law. In support of its motion, the government contends that its lien attached to all property of the estate at the time of Mr. Young's death, regardless of assessment or filing, and that the lien extends to all property derived from the estate now in the defendants' possession. Additionally, the government invokes the Commissioner's presumption of correctness with respect to the tax assessments involved in this case.

### A. *Estate of George G. Young, Hanna A. Lawler (Ruggiero), Executrix*

As to defendant Hanna Ruggiero, executrix of the estate, I conclude that the government's motion must be granted. Pursuant to both the general tax lien provision (§ 6321) [10] and the special estate tax lien statute (§ 6324(a)), [11] the government has a valid lien on all interests in the Development Tract and the Farm Tract now held by the executrix. [12]

The estate's answer to the government's motion does not take issue with the legal basis of the government's claim; the estate requests either a further extension of time for payment of taxes, or a re-calculation of the tax due, based on the current value of the property. I am not persuaded, however, that a further delay in payment of the tax would accomplish anything except to increase the statutory interest charges against the estate. Moreover, the estate cites no authority for its contention that I have discretion to substitute the property's current market value for its previously assessed worth, and I find no basis for shifting the risk of real estate depreciation to the government.

### B. *Commonwealth of Pennsylvania*

The federal government's motion for summary judgment against the Commonwealth of Pennsylvania seeks to establish

---

**9.** The United States failed to specify § 6324 as a basis for its tax lien in the Complaint, but the government's motion for summary judgment and supporting memorandum made clear the government's reliance on the special estate tax lien statute. In apparent response to Helen Young Gallagher's memorandum in opposition to the government's motion, counsel for the United States moved at oral argument to amend the complaint to state a cause of action under § 6324. No party opposed the motion, and pursuant to Fed.R.Civ.P. 15(a), I will grant it. Assuming that amendment of the complaint was necessary, I conclude that no party will suffer unfair prejudice from the government's belated reference to § 6324. The United States advanced its amplified legal theory in a Memorandum of Law filed December 10, 1982, and the defendants have had sufficient opportunity during the interim settlement efforts to challenge the application of § 6324 to this case. Section 6324 is directly relevant to the merits of this action, and so, absent unfair prejudice to any party, the interests of justice require that the motion be granted.

**10.** Section 6321 provides the government a lien against the property of taxpayers who fail to pay *any* tax after demand:

§ 6321. *Lien for taxes.*

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

**11.** Section 6324 provides the government additional leverage in the disposition of decedents' estates. The special estate tax lien comes into force immediately upon the taxpayer's death. Section 6324(a)(1) states:

§ 6324. *Special liens for estate and gift taxes.*
(a) *Liens for estate tax.*—Except as otherwise provided in subsection (c)—
(1) *Upon gross estate.*—Unless the estate tax imposed by chapter 11 is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien.

Other subsections of § 6324 relating to the liability of transferees and the protection of good faith purchasers are discussed below.

**12.** This includes the entire Development Tract as well as Mrs. Ruggiero's portion of the Farm Tract.

the federal estate tax lien as superior to any claims of the Commonwealth against property of the Young estate. In a Memorandum of Law filed June 1, 1984, the Commonwealth responds that its estate tax lien took effect simultaneously with the federal encumbrance, and that, as a sovereign taxing authority, the Commonwealth should therefore be entitled to share *pro rata* in distribution of proceeds of the estate. The federal government's reply, filed July 27, 1984, argues that Pennsylvania's lien was not sufficiently choate to avoid attachment of a superior federal estate tax lien which also arose at the time of Mr. Young's death. In addition, the federal government contends that the federal charge would take precedence even if it were established that the Commonwealth's lien became perfected simultaneously. After careful consideration of the parties' arguments, I conclude that the federal lien is superior, and entitled to priority in disposition of the estate's assets.

■ The relative priority of debts to the federal government, whether or not secured by liens, is an issue which has long perplexed the courts. Because no federal constitutional principle accords debts to the sovereign absolute priority, "[t]he Federal Government's claim to priority ... rests as a matter of settled law only on statute." [13] *United States v. Moore*, 423 U.S. 77, 81, 96 S.Ct. 310, 313, 46 L.Ed.2d 219 (1975). Absent such legislation, the principle governing priority is " 'the first in time is the first in right.' " *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). Nevertheless, on several occasions the Supreme Court has qualified that general precept, holding federal tax liens superior to earlier state-created liens when the antecedent encumbrance was inchoate, indefinite or otherwise unperfected. *See, e.g. United States v. Security Trust & Savings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950). *See generally* Kennedy, *From Spokane County to Vermont: The Campaign of the Federal Government Against the Inchoate Lien*, 50 Iowa L.Rev. 724, 727–735 (1965) (hereinafter "Kennedy"). Under this "choateness" test, in order for a non-federal lienor to survive the challenge posed by a subsequent federal lien, "the identity of the lienor, the property subject to the lien, and the amount of the lien ... [must be] established." *United States v. City of New Britain*, 347 U.S. at 84, 74 S.Ct. at 369.

■ Application of the choateness test to the case at bar mandates priority treatment of the federal government's claim for taxes. Accepting the Commonwealth's statement that its tax lien arose upon Mr. Young's death, but recognizing that evaluation of the resultant lien is a federal question,[14] I am persuaded that the state-created encumbrance failed to attain that degree of perfection which would protect it from federal supervention. In particular, the *amount* of the Commonwealth's claim was uncertain when the federal special estate tax lien attached, and it remained undetermined until administrative procedures fixed the value of the decedent's property and the amount of the tax. Although such uncertainty as to the amount of the Commonwealth's tax lien might not render Pennsylvania's lien vulnerable to subsequent private lienors, the Commonwealth's lack of a fixed encumbrance deprives its lien of the specific and perfected character needed to prime a subsequent federal tax lien. *See United States v. Texas*, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356 (1941); *New York v. Maclay*, 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754 (1933); *In re Priest*, 712 F.2d 1326 (9th Cir.1983).[15] Assuming, therefore,

13. The federal government's reliance on the Constitution as a source of priority is therefore misplaced.

14. *Aquilino v. United States*, 363 U.S. 509, 514, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960).

15. Although formulated to resolve priority questions under the federal insolvency statute, the choateness test has been applied by the Supreme Court in conjunction with the "first in time" rule to accord special priority to federal tax liens. *See United States v. Security Trust & Savings Bank*, 340 U.S. 47, 51, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950); *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 721 n. 8, 99 S.Ct. 1448, 1454 n. 8, 59 L.Ed.2d 711 (1979). The concept of choateness, of course, has been applied with somewhat greater rigor in cases arising under the insolvency statute, but even in cases outside the insolvency context, it remains essential that

that Pennsylvania's lien became effective under state law at the time of Mr. Young's death, the Commonwealth's lien served "merely as a *caveat* of a more perfect lien to come," *New York v. Maclay*, 288 U.S. at 294, 53 S.Ct. at 324; against the federal government it secured neither priority nor parity for the Commonwealth's tax claim.[16]

In its memorandum of law, the Commonwealth disputes the federal government's claim to priority, arguing that the federal priority statute, 31 U.S.C. § 3713, does not accord federal tax liens a preferred status on the facts of this case. The federal government responds that the priority statute is inapposite because the government did not base its claim on that statute, but the United States contends nevertheless that the priority statute would compel a result in its favor were I to find it applicable.

■ Although I have decided that the federal lien is superior under ordinary priority rules, I find further support for my conclusion in consideration of the priority statute. Assuming, as it appears, that the Young estate is currently insufficient to pay its debts, 31 U.S.C. § 3713(a)(1)(B), I note that long-standing legislation substantially *improves* the national government's claim to priority when the person indebted to the government becomes insolvent. As amended, revised section 3713 provides in full:

§ 3713. *Priority of Government claims.*

(a)(1) A claim of the United States Government shall be paid first when—

(A) a person indebted to the Government is insolvent and—

(i) the debtor without enough property to pay all debts makes a voluntary assignment of property;

(ii) property of the debtor, if absent, is attached; or

(iii) an act of bankruptcy is committed; or

(B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.

(2) This subsection does not apply to a case under title 11.

(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

In addition, § 3713 and its predecessors have been accorded a broad judicial construction. Interpreting the priority statute then in effect, the Supreme Court declared in *United States v. Vermont*, 377 U.S. 351, 357, 84 S.Ct. 1267, 1270, 12 L.Ed.2d 370 (1964):

Section 3466 on its face permits no exception whatsoever from the statutory command that '[w]henever any person indebted to the United States is insolvent ... debts due to the United States shall be first satisfied.' The statute applies to all the insolvent's debts to the Government, whether or not arising from taxes, and whether or not secured by a lien.

■ In the context of antecedent state-created liens, the priority statute provides the federal government a particularly potent weapon. Against such encumbrances, the federal claim is entitled to prevail unless the prior lienor can meet a test of "choateness" approaching actual possession of the collateral. *United States v. Gilbert Associates, Inc.*, 345 U.S. 361, 366, 73 S.Ct. 701, 704, 97 L.Ed. 1071 (1953). As the Supreme Court stated in *Gilbert Associates:* "In claims of this type, 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no

---

the non-federal claimant hold a lien of an established value before attachment of the federal encumbrance.

**16.** Because I conclude that the Commonwealth's lien was not choate when the federal lien at-

tached, I have no occasion to consider whether the Commonwealth would be entitled to a *pro rata* distribution had the liens become perfected simultaneously.

claim against property no longer in the possession of the debtor." 345 U.S. at 366, 73 S.Ct. at 704. Thus, although "[i]n theory, the statute does not defeat liens that are choate at the time of insolvency ... in practice, it has proved difficult for nonfederal lienors to satisfy the strictures of the choateness test." [17] *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 721, n. 8, 99 S.Ct. 1448, 1454, n. 8, 59 L.Ed.2d 711 (1979).

Measured by this exacting standard, the Commonwealth's estate tax lien certainly cannot withstand the federal claim to priority under § 3713. The Commonwealth's lien did not precede the federal lien; both estate tax liens arose simultaneously upon Mr. Young's demise. Furthermore, neither the Commonwealth's estate tax statute, nor any enforcement action taken by Pennsylvania officials reduced to virtual possession the Commonwealth's interest in the estate's assets before, or at the time of, attachment of the federal encumbrance. *Cf. United States v. Gilbert Associates, Inc., supra.* Indeed, Pennsylvania's enforcement procedure for estate tax liens, both at the time of Mr. Young's death and under the current Inheritance and Estate Tax Act, provides a judicial hearing before enforcement, and states that "[e]xecution *may* be issued by the court against any real property in the decedent's estate on which a lien ... exists...." 72 P.S. § 2485–825 (repealed 1982) (emphasis added); 72 Pa.C.S.A. § 1776(e).[18] *See also* 72 P.S. § 2485–821, 822, 823 (repealed 1982); 72 Pa.C.S.A. § 1776(a)–(c). Thus, when the federal lien arose, the Commonwealth's estate tax lien was not sufficiently perfected

to overcome the priority established by § 3713.

The Commonwealth argues, however, that application of the priority statute would not require priority treatment of the federal lien in this case because Mr. Young was not insolvent at his death, because federal estate taxes were not Mr. Young's "debts" before his death, and because the decedent's estate was not initially insolvent, but was so rendered by subsequent events. The Commonwealth's attempt to impose a narrow construction upon § 3713 must fail. As a measure designed to protect the public fisc, § 3713 " 'is to be construed liberally. Its purpose is not to be defeated by unnecessarily restricting the application of the word "debts" within a narrow or technical meaning.' " *County of Spokane, Washington v. United States,* 279 U.S. 80, 93, 49 S.Ct. 321, 324, 73 L.Ed.2d 621 (1929), *quoting Price v. United States,* 269 U.S. 492, 500, 46 S.Ct. 180, 181, 70 L.Ed. 373 (1926). *See also Schwartz v. Commissioner of Internal Revenue,* 560 F.2d 311, 318 n. 18 (8th Cir. 1977). "Indeed, under the decisions of ... [the Supreme] Court, '[o]nly the plainest inconsistency would warrant ... [a] finding [of] an implied exception to the operation of so clear a command as that of [the priority statute].' " *United States v. Moore,* 423 U.S. at 82–83, 96 S.Ct. at 314, *quoting United States v. Emory,* 314 U.S. 423, 433, 62 S.Ct. 317, 322, 86 L.Ed. 315 (1941). At the present time, federal estate taxes are plainly a debt of the Young estate; the estate is bound to pay such taxes; and the estate appears insufficient to satisfy its debts. Contrary to the Commonwealth's arguments, therefore, assuming that

---

**17.** Indeed, the Supreme Court has repeatedly reserved the question whether a perfected and specific lien in existence at the time of insolvency can survive attack under the priority statute. *United States v. Vermont,* 377 U.S. at 358, n. 8, 84 S.Ct. at 1271 n. 8; *United States v. Gilbert Associates, Inc.,* 345 U.S. at 365, 73 S.Ct. at 704. After consideration of the Supreme Court's treatment of antecedent state-created liens against claims of federal priority, one commentator has concluded:

Whether any lienor may prevail in a competition with the federal government for a share of the assets of an insolvent debtor undergo-

ing administration outside bankruptcy remains problematical. Until the Supreme Court actually recognizes a choate lien in a section 3466 case, the most reasonable assumption is that any lien confronting the United States under this section is inchoate and inferior.

Kennedy, *supra* at 744.

**18.** This factor, of course, lends support to my conclusion that the Commonwealth's lien was not sufficiently perfected under ordinary priority rules.

§ 3713 applied, the United States is still entitled to priority in disposition of the estate's assets.

### C. *Helen Young Gallagher*

The federal government has also moved for summary judgment against Helen Young Gallagher. As noted above, Gallagher shared ownership of the Farm Tract and Development Tract with Mr. Young as tenant in common. After Young's death and the ensuing will contest, she transferred her one-half interest in the Development Tract to the executrix in exchange for undivided ownership of most of the Farm Tract plus other consideration. Now confronted with the government's assertion of a lien under sections 6321 and 6324 of the Internal Revenue Code, Gallagher argues that she is a "purchaser" with respect to her acquired one-half interest in the Farm Tract, and that the government therefore has no lien superior to her interest in that land. I conclude, however, that, even assuming that Gallagher qualifies as a purchaser, the government's special estate tax lien takes precedence over her claim to the estate's original one-half interest in the Farm Tract.

■ At the outset, it should be made clear that the government is *not* entitled to, nor does it appear to assert, a lien against Mrs. Gallagher's original one-half interest as tenant in common with the decedent in the Farm Tract. Although § 6324(a)(2) of the Code imposes personal liability for unpaid estate taxes on the "surviving tenant" of a joint interest in property, the Code limits the surviving tenant's potential liability to the value of property received by, or in the possession of, the surviving tenant, which is included in the decedent's gross estate under sections 2034 to 2042 (non-probate property).[19] Among these provisions, only § 2040 arguably had bearing upon the estate's tax liability. As it read when the decedent's estate tax return was filed, § 2040 required inclusion in the decedent's gross estate of "the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person...."[20] The regulations promulgated under § 2040 made clear, however, that "the section has no application to property held by the decedent and any other person (or persons) as tenants in common." 26 C.F.R. § 20.2040–1(b) (1976). The decedent's one-half interest in the Farm Tract was properly included in the estate's return as probate property under *§ 2033*. Thus, § 6324(a)(2) does not render Gallagher liable for nonpayment of the estate's tax, nor does it create a lien in favor of the government against her original one-half interest in the Farm Tract.[21]

**19.** Section 6324(a)(2) provides in full:

(2) *Liability of transferees and others.*—If the estate tax imposed by chapter 11 is not paid when due, then the spouse, transferee, trustee (except the trustee of an employees' trust which meets the requirements of section 401(a)), surviving tenant, person in possession of the property by reason of the exercise, non-exercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value at the time of the decedent's death, of such property, shall be personally liable for such tax. Any part of such property transferred by (or transferred by a transferee of) such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary, to a purchaser or holder of a security interest shall be divested of the lien provided in paragraph (1) and a like lien shall then attach to all the property of such spouse, transferee, trustee, surviving tenant, person in possession, or beneficiary,

or transferee of any such person, except any part transferred to apurchaser or a holder of a security interest.

**20.** In 1981 Congress amended § 2040(a), replacing the reference to "joint tenants" with the language "joint tenants with right of survivorship." Act of August 13, 1981, Pub.L. 94–34, Title IV, § 403(c)(2), 95 Stat. 302. As amended, § 2040(a) clearly does not apply to property in which the decedent had an interest as tenant in common.

**21.** An alternative analysis of this issue is as follows: Gallagher's original interest in the Farm Tract is subject to the government's lien only if she is a "surviving tenant" with respect to the decedent's interest in that parcel. 26 U.S.C. § 6324(a)(2). The definition of "surviving tenant," in turn, is keyed to § 2040 of the Code, which requires inclusion in the decedent's gross estate of certain joint tenancy interests. 6 J. Mertens, *The Law of Federal Gift and Estate Taxation*, ¶ 43.15 at 62 (1960). Section 2040,

The one-half interest allegedly purchased by Mrs. Gallagher from the estate, however, stands on different footing. Under § 6324, the "lien against property in an estate attaches upon the death of a decedent without the filing of a notice of lien and continues for ten years." *Chevron, U.S.A., Inc. v. United States*, 705 F.2d 1487, 1490 (9th Cir.1983). *See Detroit Bank v. United States*, 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304 (1943). The interest of the estate acquired by Mrs. Gallagher was thus impressed with the government's lien at the time of Mr. Young's death. The remaining question, then, is whether the government's lien takes precedence over Mrs. Gallagher's claim to her acquired interest in the Farm Tract.

■■■ In support of her attempt to avoid the government's asserted lien, Gallagher contends that she is neither a beneficiary nor a transferee of the estate, but that she is a purchaser with respect to the estate's interest in the Farm Tract. Assuming, however, that Gallagher is justified in her assertion of purchaser status, I conclude that her acquired interest in the Farm Tract is superseded by the government's lien. Under § 6324, the special estate tax lien statute, a federal lien attached to the estate's property at the time of Mr. Young's death. That lien, moreover, may be enforced against subsequent transferees of the property. *Detroit Bank, supra.* For "[u]nless a federal statute requires a government tax lien to be recorded, the unrecorded lien may be enforced against subsequent transferees ... [and section] 6324 makes no provision for recording the special estate tax lien nor does it condition the lien's enforceability against the transferees upon recording." *United States v.*

*Vohland*, 675 F.2d 1071, 1074 (9th Cir.1982) (citations omitted).

Gallagher's argument that her alleged purchase of the estate's interest in the Farm Tract divested her acquired interest of the lien is simply inaccurate. Under § 6324(a)(2), transfer to a purchaser divests the estate tax lien with respect to "*property included in the gross estate under sections 2034 to 2042*" (*i.e.*, non-probate property) 26 U.S.C. § 6324(a)(2) (emphasis added).[22] The decedent's interest in the Farm Tract, however, was included in his gross estate as property within the probate estate under *§ 2033*.[23] Gallagher fares no better under the protections afforded purchasers by § 6324(a)(3); under that provision, property included in the gross estate is divested of the estate tax lien when transferred to a purchaser *after the estate's executrix has been discharged from personal liability pursuant to § 2204 of the Code.*[24] *See United States v. Vohland*, 675 F.2d at 1075. *See also* Rev. Rul. 69-23, 1969-1 C.B. 302. But there is no suggestion in the record that the executrix of Mr. Young's estate ever sought or received such a discharge. Therefore, even assuming that Gallagher was a purchaser of the estate's interest in the Farm Tract, she took that property subject to the government's superior lien under § 6324.

This analysis is in accord with the Ninth Circuit Court of Appeals' treatment of this issue in *United States v. Vohland, supra.* In that case, the taxpayers purchased property without notice of the government's special estate tax lien under § 6324. The district court granted the government's motion for summary judgment, enforced the lien, and ordered a foreclosure sale of the subject property. On appeal, the Ninth

---

however, does not apply to property held by tenancy in common. 26 C.F.R. § 20.2040-1(b).

**22.** *See supra,* n. 14.

**23.** *See supra* at 12-14.

**24.** Section 6324(a)(3) provides in full:
*Continuance after discharge of fiduciary.* —The provisions of section 2204 (relating to discharge of fiduciary from personal liability) shall not operate as a release of any part of

the gross estate from the lien for any deficiency that may thereafter be determined to be due, unless such part of the gross estate (or any interest therein) has been transferred to a purchaser or a holder of a security interest, in which case such part (or such interest) shall not be subject to a lien or to any claim or demand for any such deficiency, but the lien shall attach to the consideration received from such purchaser or holder of a security interest, by the heirs, legatees, devisees, or distributees.

Circuit confronted the question "[w]hether the Internal Revenue Code requires a special estate tax lien to be recorded in order for it to be enforceable against property subsequently purchased for full consideration by persons who had no notice of the lien. . . ." 675 F.2d at 1073.

The court of appeals affirmed the district court's order, ruling that the taxpayers, even as purchasers, had no defense to the government's lien. The court summarized the protections offered purchasers against the lien, distinguishing between property included in the gross estate pursuant to § 2033 (probate property) and property included in the estate pursuant to §§ 2034 to 2042 (non-probate property). The court's analysis, and result, apply squarely to the facts of the instant case:

> The statute provides purchasers considerable, though not complete protection. Upon transfer of non-probate property [5] to a purchaser, the property is divested of the lien, so that a purchaser of such property is fully protected. I.R.C. § 6324(a)(2). Property that was part of the "probate" estate, *i.e.*, I.R.C. § 2033 property, is divested of the lien when it is transferred to a subsequent purchaser, but only if the estate's executor has been discharged from personal liability pursuant to I.R.C. § 2204. I.R.C. § 6324(a)(3). Appellants' property was probate property, but appellants concede that the executor was never discharged under § 2204. None of the pro-

visions of § 6324 therefore protect appellants, and the lien created by the statute survived the transfer of the property to them.

---

[5] "Non-probate" property is property included in the gross estate under sections 2034 to 2042.

675 F.2d 1074–1075 (some footnotes omitted).

Finally, I note that a revenue ruling published in 1969 supports my conclusion. Rev.Rul. 69–23, 1969–1 C.B. 302. There it was ruled that, although a purchaser might be protected against an unfiled general federal tax lien under § 6321 of the Code, a purchaser who obtains probate property of a decedent's estate "is not protected against the Federal estate tax lien . . . except as . . . specifically provided in section 6324 of the Code." The revenue ruling also pointed out that the government's special estate tax lien under § 6324 operates independently of the general lien arising from unpaid taxes which is imposed by § 6321. Thus, in the case at bar, even if the federal lien under § 6321 were inferior to Gallagher's acquired interest in the Farm Tract, the special lien under § 6324 provides the government a superior claim.

## III. *Foreclosure*

■ As noted above, the government seeks in this action to foreclose its lien by sale of the real property now subject to the lien. It is clear that, under 26 U.S.C. § 7403,[25] the government is entitled to

---

**25.** Section 7403 provides:

(a) Filing.—In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For purposes of the preceding sentence, any acceleration of payment under section 6166(g) shall be treated as a neglect to pay tax.

(b) Parties.—All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto.

(c) Adjudication and decree.—The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary or his delegate directs.

(d) Receivership.—In any such proceeding, at the instance of the United States, the court may appoint a receiver to enforce the lien, or, upon certification by the Secretary or his del-

foreclose by sale against the real property now in the possession of Hanna Ruggiero. It is likewise apparent that the Farm Tract is subject to foreclosure sale, despite Helen Gallagher's nonliable one-half interest in that tract. Although the Supreme Court has interpreted section 7403 to accord district courts "some limited room ... for the exercise of reasoned discretion" in ordering the sale of property in which a nonliable third party holds an interest, *United States v. Rodgers*, 461 U.S. 677, ——, 103 S.Ct. 2132, 2149, 76 L.Ed.2d 236 (1983), I have not been asked to exercise my discretion to order an alternative form of relief. Mrs. Gallagher has not advanced, and the current record does not disclose, equitable considerations warranting modification of the foreclosure remedy sought by the government.

## IV. *Conclusion*

Against the property held by the executrix, the government is entitled to enforcement of its lien and sale of the property under § 7403. Against the Commonwealth of Pennsylvania, the federal government in entitled to priority in the disposition of the proceeds. Against Mrs. Gallagher, the government is entitled to a lien on the estate's former one-half interest as tenant in common, and to enforcement of that lien by foreclosure.

## AMENDED ORDER

This 19th day of October, 1984, pursuant to the attached Stipulation entered into between plaintiff, United States of America, and defendant, Helen A. Young, through their respective attorneys, it is ordered that:

1. Plaintiff, United States of America, is entitled to enforcement of its lien and to a sale of the interest of the decedent, George C. Young, in the real property described in Exhibits "B" through "D" of Plaintiff's Complaint, being the tracts referred to as the "Development Tract", the "Farm Tract", and the tract containing a "house and three acres", the interest of

decedent being one-half (½) of all the property, he having held such property as a tenant-in-common with Helen A. Young.

2. A final order not having been entered to date, no final order shall be entered until such time as plaintiff shall have had an opportunity to respond to defendant Helen A. Young's "Motion For Relief From Order", filed on October 12, 1984.

## STIPULATION

COME NOW the United States of America, plaintiff, by and through its attorney, Frederic J. Baker, Esquire, Trial Attorney, Tax Division, Department of Justice, and Helen A. Young, defendant, by and through her attorney, Dominic T. Marrone, Esquire, and stipulate to the amendment of the Court's Order of August 22, 1984, as follows:

1. Plaintiff, the United States of America is entitled to enforcement of its lien and to a sale of the interest of decedent, George C. Young, in the property held by defendants Helen A. Young and Hannah A. Lawler, Executrix of the estate of George C. Young, it being understood that the lien shall be enforced against one-half (½) of all the real estate described in Exhibits "B" through "D" of plaintiff's complaint, i.e., the tracts referred to as the "Farm Tract", the Development Tract, and an additional tract referred to as containing a house and three acres.

2. There having been no final order entered in this case up to this time, and defendant, Helen A. Young, having filed a "Motion For Relief From Order" on October 12, 1984, the parties agree that plaintiff, United States of America, shall be given time to respond to said motion and that the Court shall not enter a final order until such response has been filed or any other action deemed necessary by the Court shall have been taken.

3. The parties agree that the Court enter an order amending its order of August

egate during the pendency of such proceedings that it is in the public interest, may

appoint a receiver with all the powers of a receiver in equity.

22, 1984, in accordance with this stipulation.

Date: October 17, 1984